J-S01002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.P., MOTHER | : | |
| | : | |
| | : | No. 1298 MDA 2020 |

Appeal from the Decree Entered September 3, 2020
In the Court of Common Pleas of Tioga County Orphans' Court at No(s):
No. 95 O.C. 2019

| | | |
|---|---|---|
| IN RE: A.J.B.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.P., MOTHER | : | |
| | : | |
| | : | No. 1299 MDA 2020 |

Appeal from the Decree Entered September 3, 2020
In the Court of Common Pleas of Tioga County Orphans' Court at No(s):
No. 96 O.C. 2019

| | | |
|---|---|---|
| IN RE: M.D.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.P., MOTHER | : | |
| | : | |
| | : | No. 1300 MDA 2020 |

Appeal from the Decree Entered September 3, 2020
In the Court of Common Pleas of Tioga County Orphans' Court at No(s):
No. 97 O.C. 2019

J-S01002-21

BEFORE: LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 15, 2021**

N.P. (Mother) appeals from the trial court's decrees involuntarily terminating her parental rights to her three minor children, B.A.M. (born 6/15), A.J.B.M. (born 6/17), and M.D.M. (born 8/18) (collectively, Children).[1] Because Mother has failed to make progress in her parenting skills, refused to engage in drug treatment, and failed to address her significant mental health concerns, all factors that led to Children's removal, we affirm on the basis of the trial court's opinions.

The Tioga County Department of Human Services (DHS) filed a dependency petition with regard to Children, alleging that Mother had significant issues related to parenting, mental health, and substance abuse. After a hearing, Children were adjudicated dependent and placed in foster care. It was recommended that Mother participate in a dual-purpose in-patient substance abuse and mental health treatment program,[2] several parenting programs, and complete a psychological examination. The goal remained reunification. The court held permanency review hearings in June 2019, September 2019, December 2019, March 2020, and June 2020.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Children's father, J.M., consented to the termination of his parental rights, which was confirmed by the trial court on June 23, 2020. He is not a party to this appeal.

[2] At the final termination hearing, held in September of 2020, Mother testified that she had been diagnosed with Bi-Polar Disorder, Bi-Polar 2, generalized anxiety disorder, depression, and PTSD. N.T Termination Hearing, 9/1/20, at 95-96.

- 2 -

After almost one year of providing services to Mother in order to reunify her with Children, DHS filed petitions to involuntarily terminate Mother's parental rights to Children on December 11, 2019; the petitions sought termination pursuant to subsections 2511(a)(1), (2), and (8)[3] of the Adoption Act.[4] At a permanency review hearing held on June 23, 2020, DHS sought to change the goal from reunification to adoption. While the court found Mother had made "minimal" progress on her court-ordered goals, the court deferred its decision on goal change. Termination hearings were held on June 30,

---

[3] Notably, DHS's petition does not mention that termination should be granted with regard to subsection 2511(b)—a necessary component of the bifurcated legal analysis required to involuntarily terminate parental rights under the Adoption Act. **See In re C.P.**, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists **and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)**.

[4] 23 Pa.C.S. §§ 2101-2938.

2020,[5] July 23, 2020,[6] and September 1, 2020.[7] The delay between the final

two hearings was attributed to Mother voluntarily admitting herself to a Tioga

County hospital in July 2020 due to an outstanding warrant for emergency in-

_____

[5] At the June 30, 2020 hearing, six witnesses testified, in-person and virtually, including Mother's parenting case manager, Mother's Support, Teaching and Educating Parents (STEP) providers, Mother's visitation supervisor, Mother's DHS Service Access Management caseworker, and Children's foster mother. *See* N.T. Termination Hearing, 6/30/20, at 9-132. At the proceeding, DHS also admitted, as exhibits, its records reflecting Mother's poor visitation record, drug test results, lack of attendance for a parenting support program, and Mother's signed "Refusal of Service" for the STEP program. Upon oral motion of Mother's counsel, however, the court granted a continuance of the matter to July 23, 2020, due to the fact that Mother was not in attendance. *Id.* at 142.

[6] At the July 23, 2020 hearing, Mother again failed to appear. Mother's counsel indicated that he had last spoken with her on July 15th when she told him that she would be present for the hearing on the 23rd. N.T. Termination Hearing, 7/23/20, at 2. The court ultimately determined that it would not grant another continuance, permitted counsel and the guardian *ad litem* to give closing remarks, and entered findings of fact concluding that Mother had made little to no progress in addressing her mental health or parenting issues. *Id.* at 13-14. Although the court stated that DHS established by clear and convincing evidence that termination was proper, it did not enter final termination decrees at that time. *Id.* at 20-21. At the final termination hearing on September 1, 2020, the court reopened the proceedings and permitted Mother to testify. Two days later, on September 3, 2020, the court entered its final decrees terminating Mother's parental rights under sections 2511(a)(1), (2), (8), and (b). *See infra* at n.9. Mother now appeals from those decrees.

[7] At the termination hearings, Children were represented by a guardian *ad litem* as well as legal counsel. *See* 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and *In re K.R.*, 200 A.3d 969 (Pa. Super. 2018) (en banc), *but see In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

patient mental health treatment (302 Warrant).[8]  On September 3, 2020,[9] the trial court entered three separate decrees involuntarily terminating Mother's parental rights to Children pursuant to  sections 2511(a)(1), (2), (8) & (b). *See* Findings of Fact, Discussion and Opinion, 9/3/20, at 6-8.  Mother filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Mother presents the following issues for our consideration:

> (1)    Whether the [f]indings of the [t]rial [c]ourt support the conclusion that Mother had not made sufficient progress in addressing her mental health issues, parental abilities, and substance abuse issues.

> (2)    Whether the trial court abuse[d] its discretion in finding there was clear and convincing evidence to support termination under 23 Pa.C.S. [§§] 2511(a)(1), (2), [and] (8).

Appellant's Brief, at 8.

---

[8] *See* 50 P.S. § 7302(a)(1) (under Mental Health Procedures Act (MPHA), upon written application by physician or other responsible person, warrant may issue for emergency examination of individual where facts set forth "reasonable grounds to believe a person is severely mentally disabled and in need of immediate treatment").  At the time of her in-patient treatment, Mother admitted to having recently used methamphetamine and moderately using illegal drugs.  Maternal grandmother filled out an application for involuntary emergency examination and treatment indicating that Mother was a clear and present danger to herself,  having attempted suicide.  *See* 302 Emergency Application, 7/19/20, at 2.  Mother ultimately decided to voluntarily admit herself for treatment.  *See* 50 P.S. §§ 7201-7202.

[9] The court reopened the record and permitted Mother to testify and enter evidence on her own behalf at the September 1, 2020 termination hearing. *See* N.T. Termination Hearing, 9/1/20, at 58-59.  Two days later it entered its final decrees terminating Mother's parental rights.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well[-established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

After a review of the certified record, the parties' briefs, and relevant case law, we affirm the trial court's decrees involuntarily terminating Mother's parental rights to Children pursuant to section 2511(a)(8)[10] (primary conditions leading to removal and placement of Children continue to exist). We affirm the decrees based upon the well-reasoned opinion and Rule 1925(a)

---

[10] Pursuant to section 2511(a)(8), a parent's rights with regard to his or her child may be terminated "after a petition has been filed on [] the following ground[]: "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist[,] and termination of parental rights would best serve the needs and welfare of the child." 23 Pa.C.S. § 2511(a)(8).

statement authored by the Honorable George W. Wheeler.[11]  **See** Findings of Fact, Discussion and Opinion, 9/3/20, at 5-6 (Children had been removed for approximately 18 months at time of last termination hearing; Mother made no progress addressing her significant serious mental health concerns where she voluntarily discontinued all mental health care and ceased to engage and participate in mental health counseling; Mother failed to implement any recommended parenting skills; Mother recently tested positive for illicit use of controlled substances; and Mother failed to engage in drug treatment);  **see** Pa.R.A.P. 1925(a) Statement, 11/13/20, at 1-2 (trial court reiterating that Mother:  made no progress toward parenting and substance treatment goals; declined administration of most substance use tests; tested positive for drug and alcohol use; attended only 9 out of 33 safe parenting classes; inconsistently met with parenting instructor; was unable to provide safe environment for Children, requiring two supervisors during visits; rejected offer for STEP services;[12] and failed to comply with counseling recommendations and medication management to address mental health

---

[11] We need only agree with the trial court's decision as to any one subsection of section 2511(a) in order to affirm the termination of parental rights.  **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

[12] On the bottom of the signed refusal form, Mother handwrote that she "would be willing to do STEP[] if [she] could see children.  Otherwise, the state wouldn't allow [her] to be a parent[,] so it's pointless."  Refusal of Service, 3/26/20.

concerns).[13]  ***See also*** N.T. Termination Hearing, 9/1/30, at 130 (trial judge explaining three reasons termination proper after Children had been removed from Mother for 18-20 months:  (1) Mother's mental health issues unresolved; (2) Mother's ongoing substance abuse disorder; and (3) Mother's failure to engage in recommended and court-ordered parenting programs); ***id.*** 7/23/20, at 13-19 (court finding that despite extensive services offered to Mother, evidence "establishes that no progress has been made in addressing the significant [and] serious mental health concerns relating to [Mother,] . . .

_____

[13] Although not raised on appeal, we similarly find that DHS presented clear and convincing evidence to support termination under section 2511(b) where it would serve Children's needs and welfare. ***In re C.P.***, ***supra***.  Children had been in foster care with proposed adoptive parents, where they are thriving physically and emotionally, for more than 1½ years at the time of the September 2020 termination hearing.  ***See*** Findings of Fact, Discussion and Opinion, 9/3/20, at 6 (Children have developed bonds with foster family, have developed socially and emotionally, and are having all their needs met; foster family, as prospective adoptive family, can provide Children with well-needed permanency); ***see also*** N.T. Termination Hearing, 6/30/20, at 125-33 (foster mother's testimony indicating her willingness to adopt Children, ability to provide any and all necessary services for Children, financial ability to take care of Children, noting bond established between her, her husband, and Children, and recognizing she meets Children's needs); ***id.*** 7/23/20, at 19-20 (court found Children are in "steady, stable, consistent[,] and loving environment with" foster parents, foster parents are ready, willing, and able to proceed with adoption and give Children needed permanency, and Children have developed socially and emotionally in foster parents' care); ***see also In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013) ("Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents.") (citation omitted). Finally, Mother's significant mental health issues and ongoing substance abuse would "negatively impact the health, safety, and welfare of [Children]."  ***See*** Findings of Fact, Discussion and Opinion, 9/3/20, at 6.

that Mother has discontinued all mental health care, . . . and [she] has made no progress in [] developing and implementing parenting skills").

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/15/2021

Received 11/30/2020 7:38:17 PM Superior Court Middle District

Filed 11/30/2020 7:38:00 PM Superior Court Middle District
1298 MDA 2020
11/13/2020 11:32:17 AM
JANE WETHERBEE
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num:        20200864

|  |  |  |
|---|---|---|
| IN RE: | : | IN THE COURT OF COMMON PLEAS |
| B.A.M., | : | OF TIOGA COUNTY, PENNSYLVANIA |
| A MINOR | : | NO.   95   OC   2019 |
|  | : | SUPERIOR COURT DOCKET 1298 MDA 2020 |

<u>Statement Pursuant to Pa.R.A.P. 1925(a)</u>

AND NOW, this 12th day of November, 2020, pursuant to Pa.R.A.P. 1925(a)(2)(ii), the undersigned provided the following regarding its September 1, 2020 Findings, Opinion, and Order.

As to the finding that Appellant failed to meaningfully address parenting concerns, relevant testimony includes that of Clara Holly, an ESP (Effective Safe Parenting) provider. Ms. Holly testified that she attempted a total of thirty-three (33) times to work with Appellant between her assignment to the case in October 2019 and the onset of the Covid-19 pandemic in March 2020, Appellant met with her on only nine (9) of those occasions (N.T., June 30, 030, p.11). After the onset of Covid-19 limitations, Ms. Holly attempted sixteen (16) additional sessions by phone, Appellant participated in only two (2) (N.T., June 30, 2020, p.11). During the period of service, which was targeted at parenting and substance use, Appellant made no progress toward the goals (N.T., June 30, 2020, p.14). Appellant declined most requested substance use tests and of those completed, one was negative, one was positive for alcohol, and the third was positive for methamphetamine (N.T., June 30, 2020, p.11). Appellant, in her own testimony acknowledged the use of methamphetamines, including the date of her hospitalization and describes her substance use as a "moderate issue" rather than a "habitual one" (N.T., September 1, 2020, pp.72, 83-84).

Eileen DeWitt, STEPs (Supporting, Teaching, and Educating Parents) provider was assigned to work with Appellant. Ms. DeWitt's work with Appellant was from April 2019 through March 2020. Ms. DeWitt attempted to provide parenting instruction and support. Appellant met inconsistently

with Ms. DeWitt. Appellant refused to meet with Ms. DeWitt from December 2019 through March 2020 (N.T., June 30, 2020, p.38). Ms. DeWitt indicated that while Appellant would sometimes attempt to use the strategies she was taught, she would only do so briefly and then stop (N.T., June 30, 2020, pp.37-38). It was also noted by Ms. DeWitt that visitation for Appellant require two staffers to ensure the children's safety because Appellant could not do so herself, even at the end of the service period (N.T., June 30, 2020 pp.36, 60). Mr. Runyan, the visitation supervisor, provided similar testimony (N.T., June 30, 2020, p.25).

Constance Gunn assumed responsibility for STEPs services in March 2020 (N.T., June 30, 2020, p.64). Ms. Gunn made four attempts to communicate with Appellant, only one of which succeeded. At the single successful contact, Appellant formally rejected the offered services and declined any further efforts (N.T., June 30, 2020, pp.65-66). Appellant acknowledged that she had not been consistent with, followed or completed the parenting program and had ultimately refused the service (N.T., September 1, 2020, pp.85-86).

Regarding Appellant's mental health, caseworker Heather Patterson testified that mental health was a primary concern at the time of the dependency proceeding being initiated (N.T., June 30, 2020, p.86). Ms. Patterson testified that Appellant did complete the ordered psychological evaluation, but did not comply with recommendations presented, including individual counseling and medication management (N.T., June 30, 2020, pp.89-90). Appellant herself acknowledged that she had not taken into consideration, nor followed, the recommendations (N.T., September 1, 2020, pp.60-61). Appellant also acknowledged she had stopped refilling her medication.

By The Court,

George W. Wheeler, President Judge

cc: Donald Blackwell, Esquire
Lenore Urbano, Esquire
Taylor Mullholand, Esquire
James Smith, Jr., Esquire
Jennifer Traxler, Esquire - Deputy Prothonotary
Superior Court of Pennsylvania
P.O. Box 62435, 601 Commonwealth Avenue, Suite 1600
Harrisburg, PA 17106-2435

*anw*

1298 MDA 2020

Received 11/30/2020 7:38:17 PM Superior Court Middle District

Filed 11/30/2020 7:38:00 PM Superior Court Middle District
1298 MDA 2020

RECORDED
09/03/2020 10:00:00 AM
JANE WETHERBEE
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num:        202006420

| | |
|---|---|
| IN RE: | : IN THE COURT OF COMMON PLEAS |
| B___ M___ ___ | : OF TIOGA COUNTY, PENNSYLVANIA |
| A MINOR | : NO.  95  OC  2019 |

## FINDINGS OF FACT AND OPINION

AND NOW, this 1st day of September, 2020, at a hearing held this date on the Petition for Involuntary Termination of Parental Rights, the Court finds the following:

## FINDINGS OF FACT:

1. The petitioner, the Tioga County Department of Human Services has had custody, pursuant to a Court Order entered in the Dependency Docket, the record of which has been incorporated into this proceeding since January 11th, 2019.

2. The respondent in this action is N___ P___ ___., the natural mother of the child.

3. The child in this particular action is B___ M___, born June 5th, 2015 to N___ P___ and J___ M___ ___.

4. The former co-respondent, J___ M___ the child's natural father, consented to the adoption and his parental rights were accordingly then terminated.

5. The petition seeking involuntary termination of parental rights was filed on or about December 11th, 2019.

6. During the dependency of the Dependency Case, the Department, as petitioner, has continually offered services to permit respondent to address significant concerns related to parenting, mental health, and substance use disorder.

7. The testimony presented indicates that the Permanency Plan relating to the child provides that Mother was to participate in substance use assessment and psychological assessment for the purpose of assisting in reunification.

8. Pursuant to the Service Plan, the respondent was also to participate in STEPs (Supporting, Teaching, and Educating Parents) and ESP (Effective Safe Parenting) programs, as well as following recommendations related to substance use disorder and mental health treatment.

9. The evidence presented during the course of the Termination Proceeding establishes that while these services have been continually offered, the respondent has made little to no progress in addressing mental health concerns or parenting concerns.

10. The hearing in this matter was scheduled to conclude July 23rd, 2020. The date of that proceeding was announced in open court and provided to the respondent, as established in the June 30th, 2020 Order.

11. Subsequent to the June 30th, 2020 hearing and Order, the respondent had contact with both her counsel and the Department of Human Services.

12. The respondent did not communicate with to the Court, nor the Agency, nor her counsel, any reason that she could not appear for the July 23rd, 2020 hearing.

13. Since the initial removal of the child from the respondent's care, the child has been in foster care, including an extended period of time with current resource parents and proposed adopted parents, the Wilsons.

14. The Wilsons have attended to the child's physical, emotional, medical, and other needs during the term of the child's placement.

15. The respondent has failed to participate in any meaningful way in the financial, emotional, developmental, or other support of the child since removal.

16. The child considers the Wilson home to be his home.

## OPINION:

This matter is before the Court on a petition of the Department of Human Services, concerning the involuntary termination of the parental rights of N P to her child, B Martin. This matter first came to the Court's attention through the filing of a Dependency Action in a separate case, the record of which has been incorporated the record of these proceedings.

As a result of the action commenced in the Dependency Court, the Court removed the child from the respondent's care, placing the child in the care of the Department of Human Services, and providing that they would have legal and physical custody. This determination was made on or about January 11th, 2019. Since January 11th, 2019, the Court has conducted regular review proceedings and Ms. P has had the opportunity to participate in those proceedings. During the course of the Dependency Action, pursuant to the Family Service Plan, the Department was required to supports efforts at reunification of the child with his mother. In support of these goals, the Family Service Plan provided that the petitioner would provide support for parenting, mental health, and substance use disorder to the respondent. The respondent was obligated under the terms of the Family Service Plan to participate in psychological evaluations and to follow any recommendations, to undergo a substance use disorder assessment and to follow any recommendations, to participate in parenting programs including STEPs and ESP.

Following nearly a year of efforts at reunification, the Department of Human Services filed the instant petition on or about December 11th, 2019. The petition alleges that Mother's parental rights are subject to termination under §§(a)1, (a)2, and (a)8 of Title 23 PS 2511. Following the filing of the petition, the matter was initially scheduled for a hearing in March, appropriate counsel were appointed to represent the legal interest of the child, the Guardian ad Litem was retained from the Dependency Action and Parent Counsel, Thomas Walrath, was retained from the Dependency Action as legal counsel for the respondent, N P.. Prior to

the scheduled hearing date of March 13th, 2020, respondent, through counsel, filed a request for continuance of the action, with the concurrence of counsel for other parties, the request was granted and the hearing re-scheduled for May 21st, 2020. At the date of the scheduled proceeding on May 21st, 2020, the respondent, N    P.     appeared with counsel, Thomas Walrath and remaining parties appeared prepared to proceed with a hearing. The Court was presented with an oral motion through counsel, that Mr. Walrath be discharged as her counsel, and that new counsel be appointed. The Court, upon consideration of remarks, granted the request and directed that new counsel be appointed and that the matter again be re-scheduled. Other provisions of the Order are reflected in the Order, which is of record. As a result of the Court's Order, Attorney Jim Smith was appointed to represent the interest of Ms. Parker and the Court Administrator established a new hearing date of June 30th, 2020. On June 30th, 2020, the parties and counsel appeared, and the Department presented its case in chief in support of its petition. At the conclusion of the day on June 30th, 2020, the Court entered an Order in open court, providing that in light of the hour, the matter would be continued to permit the testimony of Ms. P    and any other evidence that she wishes to present. Counsel and parties were advised that the matter would resume at 9:00 a.m. on Thursday, July 23rd, 2020. Subsequent to that date, Ms. P     had no further contact with the Court, but she apparently had subsequent contact with her attorney and Mr. Zach Loudenslager, in the form of a request for records. Ms. P     failed to appear for the re-scheduled proceeding on July 23rd, 2020. The Court, after denying a request for a continuance, permitted the counsel for the parties to address their closing remarks and orally indicated it granted the Petition. Subsequent to the announcement of the Court's decision, Ms. P     presented herself to the local hospital in response to a mental health warrant and agreed to enter treatment at an in-patient treatment facility. Upon learning Ms. P     had in fact entered treatment, the undersigned requested a Status Conference with all counsel and determined it would defer entry of the Order and Decree Termination of Mr. Parker's parental rights. Counsel for Ms. P     was directed to show cause why the Decree should not be

entered and filed a response as directed. On September 1, 2020, counsel for the parties appeared as ordered, to address the Rule to Show Cause. The Court, upon consideration of the argument, re-opened the record to permit Mother's testimony. Upon conclusion of the same, the record was closed and the matter is now ready for decision.

As noted above, the Agency asserts multiple grounds in support of its request to terminate the parental rights of N        P        . The Agency asserts, pursuant to §§(a)8, that the child has been removed from the care of the parent by Court Order or voluntary agreement for a period of 12 months and that the conditions leading to the placement of the child continue to exist, and that the termination of the rights would best serve the needs and welfare of the child. The Court is prohibited from considering the actions of the respondent to remedy the conditions presented, if commenced after the filing of the petition. It is beyond question at this point that the child has been removed from the care of the respondent for a period well in excess of 12 months and in fact it is now approximately 18 months since the child was removed. The Court notes that the initial removal of the child and his siblings was related to mental health concerns, substance use disorder concerns, and parenting concerns, all impacting the health and safety of the child. The evidence presented in the course of this proceeding establishes that prior to the filing of the petition, no progress had been made in addressing the significant serious mental health concerns relating to Ms. P-       The evidence presented, in the Court's opinion, establishes that Mother had discontinued all mental health care and ceased to engage and participate in counseling or services related to her mental health. While Ms. P         did ultimately enter in-patient treatment, she did so only in response to the mental health warrant and waited to do so until after proceedings had been commenced and continued multiple times over more than 6 months. The Court further notes that as to parenting, the testimony establishes that while Mother has, at times, been present for and met with service providers, that she has made no progress in developing and implementing parenting skills during the course of the program. Rather, the evidence would suggest that Mother meets with service providers, discusses various matters with

them, but fails to implement any of the recommended changes. With regard to substance use disorder, the Court notes that there may have been some minimal progress in that area, in that prior to her in-patient treatment, had not recently been a positive test for illicit use of controlled substances. However, Mother failed to engage in treatment as directed.

Given the foregoing, the Court is satisfied that, in fact, the primary conditions leading to the removal and placement of the children continue to exist. The last prong of the Court's analysis pursuant to this subsection, concerns the needs and welfare of the child. In this case, the child and his siblings have been placed in a steady, stable, consistent, and loving environment with the Wilsons. The placement of this child and his siblings has permitted the child to develop bonds and connections with the resource family. During the course of placement, the child has developed socially and emotionally, and has had all of his needs met by the Wilsons with the support of the Department of Human Services. It has further been established that the Wilsons are ready, willing, and able to proceed with an adoption to ensure permanency, which the child is entitled to. In consideration of the child's needs and the welfare of the child, upon the respondent's side, the Court notes that there has been no real development in establishing the conditions that would be required for the child to return to her care, and no evidence that would tend to establish that the child, at any reasonably foreseeable date, would be able to resume life with his mother. In fact, the evidence is quite to the contrary, as it is evident that the respondent continues to suffer from significant mental health concerns and significant deficits in parenting, which would negatively impact the health, safety, and welfare of the child and his siblings, further, Mother's substance use disorder continues.

Based on the foregoing, the Court is satisfied that the Department, as petitioner, has established by clear and convincing evidence, grounds for termination of the parental rights of N      P        to the child B      M       .

The Court further notes that as to the allegations under §§(a)1, it is clear to the Court that by her conduct for a period of at least 6 months, proceeding the filing of the petition, Ms.

P[...] has refused and failed to perform parental duties. The Court notes there was an extended period of time in which Ms. P[...] refused or failed to participate in visitation with the child and his siblings, that she has in no way contributed to the financial, emotional, or developmental progress and support of the child. The evidence in this case establishes that Ms. P[...] has entirely neglected her responsibilities as a parent to the child and his siblings. Accordingly, the Court is satisfied that the Agency has also established evidence which would alternatively support termination of her parental rights, pursuant to §§(a)1.

Lastly, the Court is also satisfied that the Agency has established by clear and convincing evidence, grounds for termination under §§(a)2, based upon her repeated and continued incapacity and refusal to address those incapacities, having cause the child and his siblings to be without the benefit of parental care, control, or subsistence, as required for his physical and mental wellbeing. Further, given the evidence presented, the Court is satisfied that there is no reasonably foreseeable date, nor even circumstance under which Ms. Parker would take the steps required to address the incapacity she is currently under as relates to the care, support, and wellbeing of the child.

The Court, having determined that grounds exist for the termination of the parental rights of Ms. P[...] to her child, the Court is well aware of its obligation under §§B, §2511, to undertake an analysis of the consequences of the termination of the parental rights, as well as the long-term impact on the child's wellbeing of the termination of the parental bond. The Court, in part, relies upon its findings and opinion above, in stating that it is well satisfied that the termination of parental rights of Ms. P[...] at this point to the child, is in both the child's immediate and long-term best interest. The Court notes the uncontradicted testimony presented and that this child considers the Wilson home to be his home. The Wilson home is the location at which the child engages in the daily activities of life and in which he continues to develop socially, emotionally, and educationally. The Court is satisfied that given the testimony presented, the Wilsons are not only capable and willing, but ideally suited for the important role

of providing permanency and stability in the life of this young child. While the Court notes that the child has maintained a connection with Mother through the use of visitation, as supported by both the Wilsons and the Agency, the bond between Mother and child has become extremely thin. The respondent, by her own decision, has failed to exercise visitation for extended periods of time, resulting in the child being less familiar, less attached, and less reliant upon her for his emotional and social wellbeing. It is the Court's determination, based upon the evidence before it that Ms. P           has not engaged in services or activities, which will permit her to resume at any reasonably foreseeable date, custody, care, and control in support of this child. Rather, a grant of the termination of the requested relief in terminating her rights, will permit the child to achieve the permanency and stability to which he is legally and ethically entitled. The evidence before the Court establishes that the petitioner and the Wilsons are committed to providing any and all services necessary to the child during any minimal disruption that may occur as a result of the termination of the respondent's parental rights.

Accordingly, the Court is satisfied that the Agency has established grounds for termination and that it will in fact be in the best interest of the child that the parental rights of Ms. P           be terminated. Accordingly, an appropriate decree to that effect will be separately entered this date.

By The Court,

George W. Wheeler, President Judge

cc:    TCDHS (3)
       Donald Blackwell, Esquire
       Lenore Urbano, Esquire – (GAL)
       Taylor Mullholand, Esquire – (LIA)
       James Smith, Jr., Esquire
       Randi L. Bubb, Court Administration

*anw*

*1299 MDA 2020*

RECORDED
1298 MDA 2020
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num:        202008644

IN RE:                                  :   IN THE COURT OF COMMON PLEAS

A.J.B.M.,                               :   OF TIOGA COUNTY, PENNSYLVANIA

A MINOR                             :   NO.   96   OC   2019

                                            :   SUPERIOR COURT DOCKET 1299 MDA 2020

### Statement Pursuant to Pa.R.A.P. 1925(a)

AND NOW, this 12th day of November, 2020, pursuant to Pa.R.A.P. 1925(a)(2)(ii), the undersigned provided the following regarding its September 1, 2020 Findings, Opinion, and Order.

As to the finding that Appellant failed to meaningfully address parenting concerns, relevant testimony includes that of Clara Holly, an ESP (Effective Safe Parenting) provider. Ms. Holly testified that she attempted a total of thirty-three (33) times to work with Appellant between her assignment to the case in October 2019 and the onset of the Covid-19 pandemic in March 2020, Appellant met with her on only nine (9) of those occasions (N.T., June 30, 030, p.11). After the onset of Covid-19 limitations, Ms. Holly attempted sixteen (16) additional sessions by phone, Appellant participated in only two (2) (N.T., June 30, 2020, p.11). During the period of service, which was targeted at parenting and substance use, Appellant made no progress toward the goals (N.T., June 30, 2020, p.14). Appellant declined most requested substance use tests and of those completed, one was negative, one was positive for alcohol, and the third was positive for methamphetamine (N.T., June 30, 2020, p.11). Appellant, in her own testimony acknowledged the use of methamphetamines, including the date of her hospitalization and describes her substance use as a "moderate issue" rather than a "habitual one" (N.T., September 1, 2020, pp.72, 83-84).

Eileen DeWitt, STEPs (Supporting, Teaching, and Educating Parents) provider was assigned to work with Appellant. Ms. DeWitt's work with Appellant was from April 2019 through March 2020. Ms. DeWitt attempted to provide parenting instruction and support. Appellant met inconsistently

with Ms. DeWitt. Appellant refused to meet with Ms. DeWitt from December 2019 through March 2020 (N.T., June 30, 2020, p.38). Ms. DeWitt indicated that while Appellant would sometimes attempt to use the strategies she was taught, she would only do so briefly and then stop (N.T., June 30, 2020, pp.37-38). It was also noted by Ms. DeWitt that visitation for Appellant require two staffers to ensure the children's safety because Appellant could not do so herself, even at the end of the service period (N.T., June 30, 2020 pp.36, 60). Mr. Runyan, the visitation supervisor, provided similar testimony (N.T., June 30, 2020, p.25).

Constance Gunn assumed responsibility for STEPs services in March 2020 (N.T., June 30, 2020, p.64). Ms. Gunn made four attempts to communicate with Appellant, only one of which succeeded. At the single successful contact, Appellant formally rejected the offered services and declined any further efforts (N.T., June 30, 2020, pp.65-66). Appellant acknowledged that she had not been consistent with, followed or completed the parenting program and had ultimately refused the service (N.T., September 1, 2020, pp.85-86).

Regarding Appellant's mental health, caseworker Heather Patterson testified that mental health was a primary concern at the time of the dependency proceeding being initiated (N.T., June 30, 2020, p.86). Ms. Patterson testified that Appellant did complete the ordered psychological evaluation, but did not comply with recommendations presented, including individual counseling and medication management (N.T., June 30, 2020, pp.89-90). Appellant herself acknowledged that she had not taken into consideration, nor followed, the recommendations (N.T., September 1, 2020, pp.60-61). Appellant also acknowledged she had stopped refilling her medication.

By The Court,

George W. Wheeler, President Judge

cc:    Donald Blackwell, Esquire
Lenore Urbano, Esquire
Taylor Mullholand, Esquire
James Smith, Jr., Esquire
Jennifer Traxler, Esquire - Deputy Prothonotary
Superior Court of Pennsylvania
    P.O. Box 62435, 601 Commonwealth Avenue, Suite 1600
    Harrisburg, PA 17106-2435

*anw*

1299 MDA 2020

Received 11/30/2020 7:38:17 PM Superior Court Middle District

Filed 11/30/2020 7:38:00 PM Superior Court Middle District
1298 MDA 2020

RECORDED
09/03/2020 10:00:00 AM
JANE WETHERBEE
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num:          202006390

| IN RE: | : | IN THE COURT OF COMMON PLEAS |
| A M , | : | OF TIOGA COUNTY, PENNSYLVANIA |
| A MINOR | : | NO. 96 OC 2019 |

## FINDINGS OF FACT, DISCUSSION AND OPINION

AND NOW, this 1st day of September, 2020, at a hearing held this date on the Petition for Involuntary Termination of Parental Rights, the Court finds the following:

## FINDINGS OF FACT:

1. The petitioner, the Tioga County Department of Human Services, has had custody, pursuant to a Court Order entered in the Dependency Docket, the record of which has been incorporated into this proceeding since January 11th, 2019.

2. The respondent in this action is N P , the natural mother of the child.

3. The child in this particular action is A M , born June 26th, 2017 to N P and J M .

4. The former co-respondent, J M , the child's natural father, consented to the adoption and his parental rights were accordingly then terminated.

5. The petition seeking involuntary termination of parental rights was filed on or about December 11th, 2019.

6. During the dependency of the Dependency Case, the Department, as petitioner, has continually offered services to permit respondent to address significant concerns related to parenting, mental health, and substance use disorder.

7. The testimony presented indicates that the Permanency Plan relating to the child

provides that Mother was to participate in substance use assessment and psychological assessment for the purpose of assisting in reunification.

8. Pursuant to the Service Plan, the respondent was also to participate in STEPs (Supporting, Teaching, and Educating Parents) and ESP (Effective Safe Parenting) programs, as well as following recommendations related to substance use disorder and mental health treatment.

9. The evidence presented during the course of the Termination Proceeding establishes that while these services have been continually offered, the respondent has made little to no progress in addressing mental health concerns or parenting concerns.

10. The hearing in this matter was scheduled to conclude July 23rd, 2020. The date of that proceeding was announced in open court and provided to the respondent, as established in the June 30th, 2020 Order.

11. Subsequent to the June 30th, 2020 hearing and Order, the respondent had contact with both her counsel and the Department of Human Services.

12. The respondent did not communicate with the Court, nor the Agency, nor her counsel, any reason that she could not appear for the July 23rd, 2020 hearing.

13. Since the initial removal of the child from the respondent's care, the child has been in foster care, including an extended period of time with current resource parents and proposed adopted parents, the Wilsons.

14. The Wilsons have attended to the child's physical, emotional, medical, and other needs during the term of the child's placement.

15. The respondent has failed to participate in any meaningful way in the financial, emotional, developmental, or other support of the child since removal.

16. The child considers the Wilson home to be his home.

OPINION:

This matter is before the Court on a petition of the Department of Human Services, concerning the involuntary termination of the parental rights of N' P to her child, Abram M . This matter first came to the Court's attention through the filing of a Dependency Action in a separate case, the record of which has been incorporated the record of these proceedings.

As a result of the action commenced in the Dependency Court, the Court removed the child from the respondent's care, placing the child in the care of the Department of Human Services, and providing that they would have legal and physical custody. This determination was made on or about January 11th, 2019. Since January 11th, 2019, the Court has conducted regular review proceedings and Ms. P has had the opportunity to participate in those proceedings. During the course of the Dependency Action, pursuant to the Family Service Plan, the Department was required to supports efforts at reunification of the child with his mother. In support of these goals, the Family Service Plan provided that the petitioner would provide support for parenting, mental health, and substance use disorder to the respondent. The respondent was obligated under the terms of the Family Service Plan to participate in psychological evaluations and to follow any recommendations, to undergo a substance use disorder assessment and to follow any recommendations, to participate in parenting programs including STEPs and ESP.

Following nearly a year of efforts at reunification, the Department of Human Services filed the instant petition on or about December 11th, 2019. The petition alleges that Mother's parental rights are subject to termination under §§(a)1, (a)2, and (a)8 of Title 23 PS 2511. Following the filing of the petition, the matter was initially scheduled for a hearing in March, appropriate counsel were appointed to represent the legal interest of the child, the Guardian ad Litem was retained from the Dependency Action and Parent Counsel, Thomas Walrath, was retained from the Dependency Action as legal counsel for the respondent, Noel Parker. Prior to the scheduled hearing date of March 13th, 2020, respondent, through counsel, filed a request for

continuance of the action, with the concurrence of counsel for other parties, the request was granted and the hearing re-scheduled for May 21st, 2020. At the date of the scheduled proceeding on May 21st, 2020, the respondent, N el P...  r appeared with counsel, Thomas Walrath and remaining parties appeared prepared to proceed with a hearing. The Court was presented with an oral motion through counsel, that Mr. Walrath be discharged as her counsel, and that new counsel be appointed. The Court, upon consideration of remarks, granted the request and directed that new counsel be appointed and that the matter again be re-scheduled. Other provisions of the Order are reflected in the Order, which is of record. As a result of the Court's Order, Attorney Jim Smith was appointed to represent the interest of Ms. P        and the Court Administrator established a new hearing date of June 30th, 2020. On June 30th, 2020, the parties and counsel appeared, and the Department presented its case in chief in support of its petition. At the conclusion of the day on June 30th, 2020, the Court entered an Order in open court, providing that in light of the hour, the matter would be continued to permit the testimony of Ms. Parker and any other evidence that she wishes to present. Counsel and parties were advised that the matter would resume at 9:00 a.m. on Thursday, July 23rd, 2020. Subsequent to that date, Ms. P rker had no further contact with the Court, but she apparently had subsequent contact with her attorney and Mr. Zach Loudenslager, in the form of a request for records. Ms. Parker failed to appear for the re-scheduled proceeding on July 23rd, 2020. The Court, after denying a request for a continuance, permitted the counsel for the parties to address their closing remarks and orally indicated it granted the Petition. Subsequent to the announcement of the Court's decision, Ms. P        presented herself to the local hospital in response to a mental health warrant and agreed to enter treatment at an in-patient treatment facility. Upon learning Ms. P       had in fact entered treatment, the undersigned requested a Status Conference with all counsel and determined it would defer entry of the Order and Decree Termination of Mr. P         parental rights. Counsel for Ms. P        was directed to show cause why the Decree should not be entered and filed a response as directed. On September 1, 2020, counsel for the parties appeared

as ordered, to address the Rule to Show Cause. The Court, upon consideration of the argument, re-opened the record to permit Mother's testimony. Upon conclusion of the same, the record was closed and the matter is now ready for decision.

As noted above, the Agency asserts multiple grounds in support of its request to terminate the parental rights of N  P    . The Agency asserts, pursuant to §§(a)8, that the child has been removed from the care of the parent by Court Order or voluntary agreement for a period of 12 months and that the conditions leading to the placement of the child continue to exist, and that the termination of the rights would best serve the needs and welfare of the child. The Court is prohibited from considering the actions of the respondent to remedy the conditions presented, if commenced after the filing of the petition. It is beyond question at this point that the child has been removed from the care of the respondent for a period well in excess of 12 months and in fact it is now approximately 18 months since the child was removed. The Court notes that the initial removal of the child and his siblings was related to mental health concerns, substance use disorder concerns, and parenting concerns, all impacting the health and safety of the child. The evidence presented in the course of this proceeding establishes that prior to the filing of the petition, no progress had been made in addressing the significant serious mental health concerns relating to Ms. P   . The evidence presented, in the Court's opinion, establishes that Mother had discontinued all mental health care and ceased to engage and participate in counseling or services related to her mental health. While Ms. P     did ultimately enter in-patient treatment, she did so only in response to the mental health warrant and waited to do so until after proceedings had been commenced and continued multiple times over more than 6 months. The Court further notes that as to parenting, the testimony establishes that while Mother has, at times, been present for and met with service providers, that she has made no progress in developing and implementing parenting skills during the course of the program. Rather, the evidence would suggest that Mother meets with service providers, discusses various matters with them, but fails to implement any of the recommended changes. With regard to substance use

disorder, the Court notes that there may have been some minimal progress in that area, in that prior to her in-patient treatment, had not recently been a positive test for illicit use of controlled substances. However, Mother failed to engage in treatment as directed.

Given the foregoing, the Court is satisfied that, in fact, the primary conditions leading to the removal and placement of the children continue to exist. The last prong of the Court's analysis pursuant to this subsection, concerns the needs and welfare of the child. In this case, the child and his siblings have been placed in a steady, stable, consistent, and loving environment with the Wilsons. The placement of this child and his siblings has permitted the child to develop bonds and connections with the resource family. During the course of placement, the child has developed socially and emotionally, and has had all of his needs met by the Wilsons with the support of the Department of Human Services. It has further been established that the Wilsons are ready, willing, and able to proceed with an adoption to ensure permanency, which the child is entitled to. In consideration of the child's needs and the welfare of the child, upon the respondent's side, the Court notes that there has been no real development in establishing the conditions that would be required for the child to return to her care, and no evidence that would tend to establish that the child, at any reasonably foreseeable date, would be able to resume life with his mother. In fact, the evidence is quite to the contrary, as it is evident that the respondent continues to suffer from significant mental health concerns and significant deficits in parenting, which would negatively impact the health, safety, and welfare of the child and his siblings, further, Mother's substance use disorder continues.

Based on the foregoing, the Court is satisfied that the Department, as petitioner, has established by clear and convincing evidence, grounds for termination of the parental rights of N P to the child A ra M .

The Court further notes that as to the allegations under §§(a)1, it is clear to the Court that by her conduct for a period of at least 6 months, proceeding the filing of the petition, Ms. P has refused and failed to perform parental duties. The Court notes there was an extended

period of time in which Ms. P.        refused or failed to participate in visitation with the child and his siblings, that she has in no way contributed to the financial, emotional, or developmental progress and support of the child. The evidence in this case establishes that Ms. P.      has entirely neglected her responsibilities as a parent to the child and his siblings. Accordingly, the Court is satisfied that the Agency has also established evidence which would alternatively support termination of her parental rights, pursuant to §§(a)1.

Lastly, the Court is also satisfied that the Agency has established by clear and convincing evidence, grounds for termination under §§(a)2, based upon her repeated and continued incapacity and refusal to address those incapacities, having cause the child and his siblings to be without the benefit of parental care, control, or subsistence, as required for his physical and mental wellbeing. Further, given the evidence presented, the Court is satisfied that there is no reasonably foreseeable date, nor even circumstance under which Ms. P.      would take the steps required to address the incapacity she is currently under as relates to the care, support, and wellbeing of the child.

The Court, having determined that grounds exist for the termination of the parental rights of Ms. P.      to her child, the Court is well aware of its obligation under §§B, §2511, to undertake an analysis of the consequences of the termination of the parental rights, as well as the long-term impact on the child's wellbeing of the termination of the parental bond. The Court, in part, relies upon its findings and opinion above, in stating that it is well satisfied that the termination of parental rights of Ms. P.      at this point to the child, is in both the child's immediate and long-term best interest. The Court notes the uncontradicted testimony presented and that this child considers the Wilson home to be his home. The Wilson home is the location at which the child engages in the daily activities of life and in which he continues to develop socially, emotionally, and educationally. The Court is satisfied that given the testimony presented, the Wilsons are not only capable and willing, but ideally suited for the important role of providing permanency and stability in the life of this young child. While the Court notes that

the child has maintained a connection with Mother through the use of visitation, as supported by both the Wilsons and the Agency, the bond between Mother and child has become extremely thin. The respondent, by her own decision, has failed to exercise visitation for extended periods of time, resulting in the child being less familiar, less attached, and less reliant upon her for his emotional and social wellbeing. It is the Court's determination, based upon the evidence before it that Ms. P        has not engaged in services or activities, which will permit her to resume at any reasonably foreseeable date, custody, care, and control in support of this child. Rather, a grant of the termination of the requested relief in terminating her rights, will permit the child to achieve the permanency and stability to which he is legally and ethically entitled. The evidence before the Court establishes that the petitioner and the Wilsons are committed to providing any and all services necessary to the child during any minimal disruption that may occur as a result of the termination of the respondent's parental rights.

Accordingly, the Court is satisfied that the Agency has established grounds for termination and that it will in fact be in the best interest of the child that the parental rights of Ms. P        be terminated. Accordingly, an appropriate decree to that effect will be separately entered this date.

By The Court,

George W. Wheeler, President Judge

cc:     TCDHS (3)
        Donald Blackwell, Esquire
        Lenore Urbano, Esquire – (GAL)
        Taylor Mullholand, Esquire – (LIA)
        James Smith, Jr., Esquire
        Randi L. Way, Court Administration
anw

Received 11/30/2020 7:38:17 PM Superior Court Middle District

Filed 11/30/2020 7:38:00 PM Superior Court Middle District
1298 MDA 2020

RECORDED
11/13/2020 11:34:31 AM
1298 MDA 2020
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num:      202008645

| | |
|---|---|
| IN RE: | : IN THE COURT OF COMMON PLEAS |
| M.D.M., | : OF TIOGA COUNTY, PENNSYLVANIA |
| A MINOR | : NO.  97  OC  2019 |
| | : SUPERIOR COURT DOCKET 1300 MDA 2020 |

<u>Statement Pursuant to Pa.R.A.P. 1925(a)</u>

AND NOW, this 12th day of November, 2020, pursuant to Pa.R.A.P. 1925(a)(2)(ii), the undersigned provided the following regarding its September 1, 2020 Findings, Opinion, and Order.

As to the finding that Appellant failed to meaningfully address parenting concerns, relevant testimony includes that of Clara Holly, an ESP (Effective Safe Parenting) provider. Ms. Holly testified that she attempted a total of thirty-three (33) times to work with Appellant between her assignment to the case in October 2019 and the onset of the Covid-19 pandemic in March 2020, Appellant met with her on only nine (9) of those occasions (N.T., June 30, 030, p.11). After the onset of Covid-19 limitations, Ms. Holly attempted sixteen (16) additional sessions by phone, Appellant participated in only two (2) (N.T., June 30, 2020, p.11). During the period of service, which was targeted at parenting and substance use, Appellant made no progress toward the goals (N.T., June 30, 2020, p.14). Appellant declined most requested substance use tests and of those completed, one was negative, one was positive for alcohol, and the third was positive for methamphetamine (N.T., June 30, 2020, p.11). Appellant, in her own testimony acknowledged the use of methamphetamines, including the date of her hospitalization and describes her substance use as a "moderate issue" rather than a "habitual one" (N.T., September 1, 2020, pp.72, 83-84).

Eileen DeWitt, STEPs (Supporting, Teaching, and Educating Parents) provider was assigned to work with Appellant. Ms. DeWitt's work with Appellant was from April 2019 through March 2020. Ms. DeWitt attempted to provide parenting instruction and support. Appellant met inconsistently

with Ms. DeWitt. Appellant refused to meet with Ms. DeWitt from December 2019 through March 2020 (N.T., June 30, 2020, p.38). Ms. DeWitt indicated that while Appellant would sometimes attempt to use the strategies she was taught, she would only do so briefly and then stop (N.T., June 30, 2020, pp.37-38). It was also noted by Ms. DeWitt that visitation for Appellant require two staffers to ensure the children's safety because Appellant could not do so herself, even at the end of the service period (N.T., June 30, 2020 pp.36, 60). Mr. Runyan, the visitation supervisor, provided similar testimony (N.T., June 30, 2020, p.25).

Constance Gunn assumed responsibility for STEPs services in March 2020 (N.T., June 30, 2020, p.64). Ms. Gunn made four attempts to communicate with Appellant, only one of which succeeded. At the single successful contact, Appellant formally rejected the offered services and declined any further efforts (N.T., June 30, 2020, pp.65-66). Appellant acknowledged that she had not been consistent with, followed or completed the parenting program and had ultimately refused the service (N.T., September 1, 2020, pp.85-86).

Regarding Appellant's mental health, caseworker Heather Patterson testified that mental health was a primary concern at the time of the dependency proceeding being initiated (N.T., June 30, 2020, p.86). Ms. Patterson testified that Appellant did complete the ordered psychological evaluation, but did not comply with recommendations presented, including individual counseling and medication management (N.T., June 30, 2020, pp.89-90). Appellant herself acknowledged that she had not taken into consideration, nor followed, the recommendations (N.T., September 1, 2020, pp.60-61). Appellant also acknowledged she had stopped refilling her medication.

By The Court,

George W. Wheeler, President Judge

cc:    Donald Blackwell, Esquire
Lenore Urbano, Esquire
Taylor Mullholand, Esquire
James Smith, Jr., Esquire
Jennifer Traxler, Esquire - Deputy Prothonotary
Superior Court of Pennsylvania
    P.O. Box 62435, 601 Commonwealth Avenue, Suite 1600
    Harrisburg, PA 17106-2435

*anw*

*1300 MDA 2020*

RECORDED
09/03/2020 10:00:00 AM
JANE WETHERBEE
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num:      20200641

IN RE:

M     M    .,

A MINOR

:  IN THE COURT OF COMMON PLEAS

:  OF TIOGA COUNTY, PENNSYLVANIA

:  NO.  97  OC  2019

## FINDINGS OF FACT, DISCUSSION AND OPINION

AND NOW, this 1st day of September, 2020, at a hearing held this date on the Petition for Involuntary Termination of Parental Rights, the Court finds the following:

## FINDINGS OF FACT:

1. The petitioner, the Tioga County Department of Human Services, has had custody, pursuant to a Court Order entered in the Dependency Docket, the record of which has been incorporated into this proceeding since January 11th, 2019.

2. The respondent in this action is Noel Parker, the natural mother of the child.

3. The child in this particular action is Malachi Martin, born August 2nd, 2018 to N  P    and J   M  r .

4. The former co-respondent, J   y M    , the child's natural father, consented to the adoption and his parental rights were accordingly then terminated.

5. The petition seeking involuntary termination of parental rights was filed on or about December 11th, 2019.

6. During the dependency of the Dependency Case, the Department, as petitioner, has continually offered services to permit respondent to address significant concerns related to parenting, mental health, and substance use disorder.

7. The testimony presented indicates that the Permanency Plan relating to the child

provides that Mother was to participate in substance use assessment and psychological assessment for the purpose of assisting in reunification.

8. Pursuant to the Service Plan, the respondent was also to participate in STEPs (Supporting, Teaching, and Educating Parents) and ESP (Effective Safe Parenting) programs, as well as following recommendations related to substance use disorder and mental health treatment.

9. The evidence presented during the course of the Termination Proceeding establishes that while these services have been continually offered, the respondent has made little to no progress in addressing mental health concerns or parenting concerns.

10. The hearing in this matter was scheduled to conclude July 23rd, 2020. The date of that proceeding was announced in open court and provided to the respondent, as established in the June 30th, 2020 Order.

11. Subsequent to the June 30th, 2020 hearing and Order, the respondent had contact with both her counsel and the Department of Human Services.

12. The respondent did not communicate with the Court, nor the Agency, nor her counsel, any reason that she could not appear for the July 23rd, 2020 hearing.

13. Since the initial removal of the child from the respondent's care, the child has been in foster care, including an extended period of time with current resource parents and proposed adopted parents, the Wilsons.

14. The Wilsons have attended to the child's physical, emotional, medical, and other needs during the term of the child's placement.

15. The respondent has failed to participate in any meaningful way in the financial, emotional, developmental, or other support of the child since removal.

16. The child considers the Wilson home to be his home.

## OPINION:

This matter is before the Court on a petition of the Department of Human Services, concerning the involuntary termination of the parental rights of N l Pa r to her child, M i M . This matter first came to the Court's attention through the filing of a Dependency Action in a separate case, the record of which has been incorporated the record of these proceedings.

As a result of the action commenced in the Dependency Court, the Court removed the child from the respondent's care, placing the child in the care of the Department of Human Services, and providing that they would have legal and physical custody. This determination was made on or about January 11th, 2019. Since January 11th, 2019, the Court has conducted regular review proceedings and Ms. P has had the opportunity to participate in those proceedings. During the course of the Dependency Action, pursuant to the Family Service Plan, the Department was required to supports efforts at reunification of the child with his mother. In support of these goals, the Family Service Plan provided that the petitioner would provide support for parenting, mental health, and substance use disorder to the respondent. The respondent was obligated under the terms of the Family Service Plan to participate in psychological evaluations and to follow any recommendations, to undergo a substance use disorder assessment and to follow any recommendations, to participate in parenting programs including STEPs and ESP.

Following nearly a year of efforts at reunification, the Department of Human Services filed the instant petition on or about December 11th, 2019. The petition alleges that Mother's parental rights are subject to termination under §§(a)1, (a)2, and (a)8 of Title 23 PS 2511. Following the filing of the petition, the matter was initially scheduled for a hearing in March, appropriate counsel were appointed to represent the legal interest of the child, the Guardian ad Litem was retained from the Dependency Action and Parent Counsel, Thomas Walrath, was retained from the Dependency Action as legal counsel for the respondent, N Pi r. Prior to

the scheduled hearing date of March 13th, 2020, respondent, through counsel, filed a request for continuance of the action, with the concurrence of counsel for other parties, the request was granted and the hearing re-scheduled for May 21st, 2020. At the date of the scheduled proceeding on May 21st, 2020, the respondent, N P appeared with counsel, Thomas Walrath and remaining parties appeared prepared to proceed with a hearing. The Court was presented with an oral motion through counsel, that Mr. Walrath be discharged as her counsel, and that new counsel be appointed. The Court, upon consideration of remarks, granted the request and directed that new counsel be appointed and that the matter again be re-scheduled. Other provisions of the Order are reflected in the Order, which is of record. As a result of the Court's Order, Attorney Jim Smith was appointed to represent the interest of Ms. P and the Court Administrator established a new hearing date of June 30th, 2020. On June 30th, 2020, the parties and counsel appeared, and the Department presented its case in chief in support of its petition. At the conclusion of the day on June 30th, 2020, the Court entered an Order in open court, providing that in light of the hour, the matter would be continued to permit the testimony of Ms. P and any other evidence that she wishes to present. Counsel and parties were advised that the matter would resume at 9:00 a.m. on Thursday, July 23rd, 2020. Subsequent to that date, Ms. P had no further contact with the Court, but she apparently had subsequent contact with her attorney and Mr. Zach Loudenslager, in the form of a request for records. Ms. P failed to appear for the re-scheduled proceeding on July 23rd, 2020. The Court, after denying a request for a continuance, permitted the counsel for the parties to address their closing remarks and orally indicated it granted the Petition. Subsequent to the announcement of the Court's decision, Ms. Parker presented herself to the local hospital in response to a mental health warrant and agreed to enter treatment at an in-patient treatment facility. Upon learning Ms. P had in fact entered treatment, the undersigned requested a Status Conference with all counsel and determined it would defer entry of the Order and Decree Termination of Mr. P parental rights. Counsel for Ms. P was directed to show cause why the Decree should not be

entered and filed a response as directed. On September 1, 2020, counsel for the parties appeared as ordered, to address the Rule to Show Cause. The Court, upon consideration of the argument, re-opened the record to permit Mother's testimony. Upon conclusion of the same, the record was closed and the matter is now ready for decision.

As noted above, the Agency asserts multiple grounds in support of its request to terminate the parental rights of N    P.    . The Agency asserts, pursuant to §§(a)8, that the child has been removed from the care of the parent by Court Order or voluntary agreement for a period of 12 months and that the conditions leading to the placement of the child continue to exist, and that the termination of the rights would best serve the needs and welfare of the child. The Court is prohibited from considering the actions of the respondent to remedy the conditions presented, if commenced after the filing of the petition. It is beyond question at this point that the child has been removed from the care of the respondent for a period well in excess of 12 months and in fact it is now approximately 18 months since the child was removed. The Court notes that the initial removal of the child and his siblings was related to mental health concerns, substance use disorder concerns, and parenting concerns, all impacting the health and safety of the child. The evidence presented in the course of this proceeding establishes that prior to the filing of the petition, no progress had been made in addressing the significant serious mental health concerns relating to Ms. P.    The evidence presented, in the Court's opinion, establishes that Mother had discontinued all mental health care and ceased to engage and participate in counseling or services related to her mental health. While Ms. P      did ultimately enter in-patient treatment, she did so only in response to the mental health warrant and waited to do so until after proceedings had been commenced and continued multiple times over more than 6 months. The Court further notes that as to parenting, the testimony establishes that while Mother has, at times, been present for and met with service providers, that she has made no progress in developing and implementing parenting skills during the course of the program. Rather, the evidence would suggest that Mother meets with service providers, discusses various matters with

them, but fails to implement any of the recommended changes. With regard to substance use disorder, the Court notes that there may have been some minimal progress in that area, in that prior to her in-patient treatment, had not recently been a positive test for illicit use of controlled substances. However, Mother failed to engage in treatment as directed.

Given the foregoing, the Court is satisfied that, in fact, the primary conditions leading to the removal and placement of the children continue to exist. The last prong of the Court's analysis pursuant to this subsection, concerns the needs and welfare of the child. In this case, the child and his siblings have been placed in a steady, stable, consistent, and loving environment with the Wilsons. The placement of this child and his siblings has permitted the child to develop bonds and connections with the resource family. During the course of placement, the child has developed socially and emotionally, and has had all of his needs met by the Wilsons with the support of the Department of Human Services. It has further been established that the Wilsons are ready, willing, and able to proceed with an adoption to ensure permanency, which the child is entitled to. In consideration of the child's needs and the welfare of the child, upon the respondent's side, the Court notes that there has been no real development in establishing the conditions that would be required for the child to return to her care, and no evidence that would tend to establish that the child, at any reasonably foreseeable date, would be able to resume life with his mother. In fact, the evidence is quite to the contrary, as it is evident that the respondent continues to suffer from significant mental health concerns and significant deficits in parenting, which would negatively impact the health, safety, and welfare of the child and his siblings, further, Mother's substance use disorder continues.

Based on the foregoing, the Court is satisfied that the Department, as petitioner, has established by clear and convincing evidence, grounds for termination of the parental rights of N__l P____ to the child M____ M____.

The Court further notes that as to the allegations under §§(a)1, it is clear to the Court that by her conduct for a period of at least 6 months, proceeding the filing of the petition, Ms.

P____ has refused and failed to perform parental duties. The Court notes there was an extended period of time in which Ms. P____ refused or failed to participate in visitation with the child and his siblings, that she has in no way contributed to the financial, emotional, or developmental progress and support of the child. The evidence in this case establishes that Ms. P____ has entirely neglected her responsibilities as a parent to the child and his siblings. Accordingly, the Court is satisfied that the Agency has also established evidence which would alternatively support termination of her parental rights, pursuant to §§(a)1.

Lastly, the Court is also satisfied that the Agency has established by clear and convincing evidence, grounds for termination under §§(a)2, based upon her repeated and continued incapacity and refusal to address those incapacities, having cause the child and his siblings to be without the benefit of parental care, control, or subsistence, as required for his physical and mental wellbeing. Further, given the evidence presented, the Court is satisfied that there is no reasonably foreseeable date, nor even circumstance under which Ms. P____ would take the steps required to address the incapacity she is currently under as relates to the care, support, and wellbeing of the child.

The Court, having determined that grounds exist for the termination of the parental rights of Ms. P____ to her child, the Court is well aware of its obligation under §§B, §2511, to undertake an analysis of the consequences of the termination of the parental rights, as well as the long-term impact on the child's wellbeing of the termination of the parental bond. The Court, in part, relies upon its findings and opinion above, in stating that it is well satisfied that the termination of parental rights of Ms. P____ at this point to the child, is in both the child's immediate and long-term best interest. The Court notes the uncontradicted testimony presented and that this child considers the Wilson home to be his home. The Wilson home is the location at which the child engages in the daily activities of life and in which he continues to develop socially, emotionally, and educationally. The Court is satisfied that given the testimony presented, the Wilsons are not only capable and willing, but ideally suited for the important role

of providing permanency and stability in the life of this young child. While the Court notes that the child has maintained a connection with Mother through the use of visitation, as supported by both the Wilsons and the Agency, the bond between Mother and child has become extremely thin. The respondent, by her own decision, has failed to exercise visitation for extended periods of time, resulting in the child being less familiar, less attached, and less reliant upon her for his emotional and social wellbeing. It is the Court's determination, based upon the evidence before it that Ms. P has not engaged in services or activities, which will permit her to resume at any reasonably foreseeable date, custody, care, and control in support of this child. Rather, a grant of the termination of the requested relief in terminating her rights, will permit the child to achieve the permanency and stability to which he is legally and ethically entitled. The evidence before the Court establishes that the petitioner and the Wilsons are committed to providing any and all services necessary to the child during any minimal disruption that may occur as a result of the termination of the respondent's parental rights.

Accordingly, the Court is satisfied that the Agency has established grounds for termination and that it will in fact be in the best interest of the child that the parental rights of Ms. P be terminated. Accordingly, an appropriate decree to that effect will be separately entered this date.

By The Court,

George W. Wheeler, President Judge

cc:    TCDHS (3)
       Donald Blackwell, Esquire
       Lenore Urbano, Esquire – (GAL)
       Taylor Mullholand, Esquire – (LIA)
       James Smith, Jr., Esquire
       Randi L. Bubb, Court Administration

*anw*